# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| ANDREW J. CHERRONE, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:11-CV-409 |
| | ) | |
| SUPERINTENDENT, INDIANA | ) | |
| STATE PRISON, | ) | |
| | ) | |
| Respondent. | ) | |

## **OPINION AND ORDER**

Petitioner Andrew Cherrone, a prisoner confined at the New Castle Correctional Facility, submitted a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, dealing with loss of earned credit time in a disciplinary hearing at the Indiana State Prison ("ISP"). The Respondent has filed his response to the petition and the administrative record. For the reasons set forth below, the Petitioner's habeas petition is **DENIED.**

BACKGROUND

On May 9, 2011, Correctional Officer Robert Hough wrote a Report of Investigation of Incident (DE 8-1) and report of conduct ("Conduct Report")(DE 8-2) charging the Petitioner with committing trafficking with a staff member. The case was assigned the identification number ISP 11-05-0057. According to the investigation (DE 9-1), Cherrone engaged in trafficking with Correctional Officer Michelle Manista when she brought Cherrone foodstuffs from outside the institution.

The Petitioner was notified of the trafficking charge on May 13, 2011, when he was screened. Cherrone pled not guilty, requested a lay advocate, requested correctional officers Michael Spencer, A. Nunn, M. Beans, and Michelle Manista as witnesses, and requested as physical evidence "photos or camera," which included any security videos of the incident (DE 8-3). A disciplinary hearing officer found Cherrone guilty and sanctioned him with a thirty day loss of telephone privileges, sixty days of disciplinary segregation, and an earned credit time deprivation of sixty days (DE 8-8). The Petitioner unsuccessfully appealed to the facility superintendent and the Indiana Department of Correction ("IDOC") final reviewing authority (DE 8-9).

DISCUSSION

Where prisoners lose good time credits at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) opportunity to call witnesses and present evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action, *Wolff v. McDonnell*, 418 U.S. 539 (1974). There must also be "some evidence" to support the decision of the prison disciplinary board." *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. 445, 455 (1985).

2

The Petitioner presents seven grounds in his habeas petition. He asserts that he was denied an effective lay advocate; that he was denied the right to call witnesses; that he was denied the right to a fair hearing/impartial hearing officer; that he was denied the right to twenty-four hours notice of the evidence against him; that he was denied the right to present evidence; that he was denied the right to be heard; and that he was denied a written copy of facts found. (DE 1 at 3-9).

I.  INEFFECTIVE LAY ADVOCATE

In ground one of his petition, Cherrone alleges that ISP officials violated IDOC policy because they gave him a lay advocate that "offered no benefit to the preparation of his defense" (DE 1 at 3). But violations of IDOC disciplinary policies do not state a claim for federal habeas relief. *Hester v. McBride*, 966 F.Supp. 765, 774-75 (N.D.Ind. 1997).

Under *Wolff v. McDonnell*, due process only requires a lay advocate in very limited circumstances, specifically, where the inmate is illiterate "or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Hester*, 966 F. Supp. at 774-75. Cherrone does not assert that he is illiterate, and his submissions in this case establish that he is literate and capable of articulating his position. Moreover, there was nothing particularly complex about this

disciplinary proceeding, as the case boiled down to whether or not Cherrone engaged in trafficking by eating "foodstuffs brought in to the facility by a staff member" (DE 8-1).

Because the Petitioner is not illiterate and his case was not complex, he was not entitled to appointment of a lay advocate under *Wolff v. McDonnell.* Moreover, the record establishes that prison officials provided Cherrone with a lay advocate, and while he asserts that the lay advocate provided him little if any actual benefit, he may not bring an "ineffective lay advocate" claim in a § 2254 action. *Hester*, 966 F.Supp. at 775.

II. DENIAL OF THE RIGHT TO CALL WITNESSES

In ground two of his petition, Cherrone asserts that he was denied a witness statement from Officer Manista and that he received inadequate witness statements from Officers Nunn and Spencer. Among the basic requirements of due process in prison disciplinary proceedings is the opportunity for the inmate to call witnesses and present evidence in his defense. *Wolff v. McDonnell*, 418 U.S. at 563-567.

When he was screened, Cherrone was afforded the opportunity to request witnesses, and he requested Officers Manista, Nunn, Spencer, and Beans as witnesses. The record establishes that Officers Nunn, Spencer, and Beans provided witness statements as requested (DE 8-4 at 1-3), but that Officer Manista was no longer

4

available to provide a statement,[1] though she had made statements to the investigating officer during the investigation.

Cherrone asserts that he was not provided with adequate witness statements from Officers Nunn and Spencer. These officers provided statements in which they wrote that they had "no knowledge of this situation" (DE 8-4 at 1 and 2). In his traverse, Cherrone argues that these officers violated IDOC policy which, he alleges, requires that staff members "must provide a reason why" they have no knowledge, "such as . . . 'because I did not work at that post,' or 'I did not work that day'" (DE 17-1 at 4). But violations of prison policies during the course of prison disciplinary proceedings do not state a claim for federal habeas relief.[2] *Hester v. McBride*, 966 F.Supp. at 774-75 (violations of IDOC disciplinary policy do not state a claim for federal habeas relief). Officers Nunn and Spencer's statements that they had no knowledge of whether or not Officer Manista and Cherrone engaged in trafficking are self explanatory. And unless Cherrone and Officer Manista trafficked in these

---

[1] Officer Manista was fired as a result of her interactions with Cherrone. The IDOC final reviewing authority explains in his denial of Cherrone's administrative appeal that the disciplinary hearing officer ("DHO") "was not in a position to require Manista to provide testimony or a statement. Although Manista was still an employee for internal appeal purposes, the DHO was not able to control her behavior in an employer/employee relationship" (DE 8-9 at 6).

[2] The IDOC final reviewing authority found that "[t]he statements of Officer Nunn and Officer Spencer were appropriate" under IDOC policy (DE 8-9 at 6).

officers' presence, they would not have any personal knowledge of whether or not Cherrone trafficked with Officer Manista.

Cherrone makes two arguments regarding Officer Manista. He first asserts that Officer Manista provided a statement to the investigating officer:

> in regards to these charges, case(s) ISP 11-05-0055, ISP 11-05-0056, and ISP 11-05-0057. This statement is exculpatory and material to the proceedings. Ofc. Manista's statement was used by Stacy Nolan therefore Cherrone must receive a copy of this statement.

(DE 1 at 4).

The Report of investigation (DE 9) covered a broad investigation into Cherrone's activities; trafficking was only a minor component of the investigation. Officer Manista provided information on other topics, but the only statement she made relevant to the charge of trafficking, as recorded by the investigating officer, was that "further admissions were that Cherrone did eat food that she brought in from outside of the facility — and that she never reported or disciplined him for that" (DE 9 at 8).

The hearing officer did not allow Cherrone to view the investigative report, though she verbally told Cherrone at the hearing that the report stated that Officer Manista had admitted trafficking with Cherrone, and the hearing officer cited Officer Manista's admission as supporting a finding that Cherrone was guilty of trafficking (DE 8-8). Under *Wolff v. McDonnell*,

6

prisoners' access to specific evidence may be restricted if it would be unduly hazardous to institutional safety or correctional goals. *Mendoza v. Miller*, 779 F.2d 1287, 1293-94 (7th Cir. 1985) (prisoners' rights to call witnesses or to view or present evidence may be circumscribed and even denied if exercising these rights would be "unduly hazardous to institutional safety or correctional goals").

Because the Report of investigation covered a wide range of topics, and contained information from inmates as well as staff members, this Court agrees with the hearing officer that allowing Cherrone to see the entire report would pose a threat to institutional safety. Giving Cherrone Officer Manista's one sentence trafficking statement, however, might not have threatened the security of the facility.

On the other hand, giving Cherrone Officer Manista's one sentence trafficking statement verbatim would not have helped him either. Cherrone already knew that Officer Manista had admitted to the investigator that she brought foodstuffs into the facility and that Cherrone had eaten them. Accordingly, even if withholding the exact wording of Officer Manista's brief statement regarding trafficking was error, it was harmless error.

In *habeas corpus* cases, a due process error is harmless unless it had a substantial and injurious effect on the outcome of the proceeding. *O'Neal v. McAninch*, 513 U.S. 432 (1995). Officer Manista's statement is inculpatory, not exculpatory as

Cherrone suggests in his habeas petition, and had the exact wording of Officer Manista's statement been divulged to him before or during the hearing, it would not have changed the course of the hearing or altered the outcome.

Cherrone's second claim is that the hearing officer did not compel Officer Manista to provide a witness statement, as Cherrone had requested at screening. The hearing officer concluded that Officer Manista no longer worked for the IDOC by the time Cherrone requested a witness statement from her and that she was therefore unavailable as a witness (DE 8-8).

In his traverse, Cherrone argues that under *Ponte v. Real*, 471 U.S. 491 (1985), if prison officials refuse to call a witness requested by a prisoner, the burden is on them to explain their decision. Cherrone further argues that "the reason given by Stacy Nolan is not a legitimate excuse in this matter" (DE 17-1 at 5). This Court disagrees. The IDOC final reviewing authority stated in response to Cherrone's administrative appeal that the disciplinary hearing officer was not in a position to require Manista to provide testimony or a statement because the hearing officer "was not able to control her behavior in an employer/ employee relationship" (DE 8-9 at 6). This Court concludes that if a proposed witness no longer works for the IDOC, the Hearing Officer has no obligation to attempt to obtain a statement from that proposed witness.

III. RIGHT TO A FAIR HEARING/IMPARTIAL HEARING OFFICER

In ground three of his petition, Cherrone states he was denied the right to a fair hearing before an impartial decision maker (DE 1 at 5-6). Cherrone specifically asserts that Hearing Officer Stacey Nolan did not follow IDOC policy regarding review of evidence, and that during the hearing she "handed Cherrone the statements of Nunn, Spencer, Braun, and the camera review(s). The use of ambush tactics are unethical and violate a fair haring" (DE 1 at 5-6). Cherrone concludes that "Stacy Nolan acted a[s] the investigative officer, sole eye witness, prosecutor, jury, and judge." (DE 1 at 6).

One of the procedural due process rights guaranteed by *Wolff v. McDonnell* to inmates during disciplinary hearings at which they could lose earned credit time is the right to be heard before an impartial decision maker. However, due process requires recusal of the decision-maker only where the decision-maker has a direct personal or otherwise substantial involvement in the circumstances underlying the charges against the prisoner. *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983), citing *Rhodes v. Robinson*, 612 F.2d 766, 773 (3rd Cir. 1979).

The Petitioner states that Hearing Officer Nolan "played a major part in the investigative process" and that because she viewed the video she was the "sole 'eye' witness on record to the alleged incident." (DE 1 at 5). But nothing in the Report of

9

Investigation (DE 9) suggests that Officer Nolan was involved in the investigation. She did review the security video, but that was because, when he was screened, Cherrone requested the video as evidence (DE 8-3). Officer Nolan reviewed the security videotape not as part of the investigation, but as a part of the disciplinary hearing process. Cherrone's submissions do not support a finding that Officer Nolan was an impartial hearing officer as defined by *Wolff v. McDonnell* and *Redding v. Fairman*.

IV. DENIAL OF TWENTY-FOUR HOURS NOTICE

*Wolff v. McDonnell* provides that prisoners must receive advance written notice of the charges against them:

> written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee.

*Wolff v. McDonnell*, 418 U.S. at 564.

In ground four of his petition, Cherrone asserts that he was "denied 24 hrs. notice of the full nature of the charge" against him (DE 1 at 6). The record of the proceedings in ISP 11-05-0057 establishes that Cherrone was given notice of the charge of trafficking on May 13, 2011 at 8:15 a.m. (DE 8-3). The disciplinary hearing took place on May 16, 2011 (DE 8-8). Therefore, Cherrone was given over three days between the date and time he was notified of the charges against him and the date

and time of the hearing — far more than the twenty-four hour notice required by *Wolff*.

Cherrone argues in his petition that "[t]he advanced warning a prisoner receives must be more than partial information at screening. During the screening all evidence must be provided to the accused giving him an opportunity to review it . . . ." (DE 1 at 6). But receiving all of the evidence against him at screening is not one of the rights guaranteed to prisoners by *Wolff v. McDonnell.* Indeed, there are circumstances where even at the hearing, a prisoner may not be allowed to view all of the evidence against him. *Mendoza v. Miller*, 779 F.2d at 1293-94.

*Baxter v. Palmigiano*, 425 U.S. 308 (1976), warns courts not to add to the procedures required by *Wolff*, which, *Baxter* held, represents a balance of interests that should not be further adjusted in favor of prisoners." *White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001). Accordingly, that Cherrone did not have twenty-four hours notice of all of the evidence against him states no claim upon which § 2254 habeas relief can be granted.

V. DENIAL OF RIGHT TO PRESENT EVIDENCE

In ground five of his petition, Cherrone asserts a "Denial of [his] Right to Present Evidence" (DE 1 at 7). In support of this claim, Cherrone argues that he had requested that the video, or still photographs from the video, "be present at the hearing" (DE 1 at 7). The hearing officer did not allow Cherrone to see

the video himself for security reasons, instead, she reviewed the tape herself and completed a video review form in which she states that:

> When viewing the camera I am able to see Ofd. Cherrone reach into a bag of food that ofc. Manista brought in earlier that day and eat whatever he took out of the bag. Later that day I also see him go into a drawer in her desk and take food and eat it.

(DE 8-5). The Respondent has not provided a copy of the video, and has advised the Court that this video "cannot be located" (DE 23-2 ¶ 8).

The hearing officer concluded "that allowing the offender to view the video evidence requested would jeopardize the security of the facility by allowing the offender to see a videotape would provide the offender with knowledge of the security cameras capabilities" (DE # 8-5). Prisoners' access to specific evidence in a disciplinary proceeding may be restricted if it would be unduly hazardous to institutional safety or correctional goals.

> The prisoner's rights to call witnesses, to present evidence, and to confrontation may be circumscribed and even denied if exercising these rights would be unduly hazardous to institutional safety or correctional goals. Prison administrators must be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Mendoza v. Miller*, 779 F.2d at 1293 (citations and quotation marks omitted). But even if the hearing officer should have allowed Cherrone to view the video, it was harmless error.

In his habeas petition, Cherrone argues that his inability to view the video in person was important because "in the section for facts found [the hearing officer] wrote the biggest reason for finding me guilty was the video" (DE1-1 at 11). This statement, however, is not correct. In fact, the Hearing Officer did not rely on the video at all to find Cherrone guilty of trafficking (DE 8-8). The hearing officer wrote in the portion of the disciplinary hearing report entitled "reason for decision" that:

> I believe the [word crossed out and initialed] IA report supports the charge and base[d] on [Officer] Manista's statement admission to giving the [offender] food in the IA report I find him guilty.

(DE 8-8). The word crossed out by the hearing officer is "video" (*Id.*). Accordingly, the hearing officer relied on Officer Manista's admission that she trafficked with Cherrone to find him guilty of trafficking, and specifically did not rely on the video to find him guilty. Because the Hearing Officer did not rely on the video to find Cherrone guilty, the video is significant only if it contained exculpatory information that Cherrone did not traffick at all.

The hearing officer noted that when she watched the video she saw Cherrone "reach into a bag of food that ofc. Manista brought in earlier that day and eat whatever he took out of the bag. Later that day I also see him go into a drawer in her desk and take food out and eat it." (DE 8-5). Cherrone argues that the

13

hearing officer have had no way of knowing where the food she observed Cherrone eat on that occasion came from. This Court agrees with Cherrone that nothing in the record, including Officer Manista's brief statement, directly supports an inference that the food he ate on the day he was videotaped was food brought in by Officer Manista.

On the other hand, even if the Court assumes that the foodstuffs the hearing officer observed Cherrone eating on the video did not come from outside the facility, or even that the video did not show Cherrone eating anything on April 13, 2011, that would not be exculpatory evidence that would defeat the charge of trafficking in foodstuffs because Officer Manista stated that she brought foodstuffs into the facility that were eaten by Cherrone. These contraband foodstuffs, brought into the facility by Officer Manista could have been eaten by Cherrone on any of the numerous days not covered by the surveillance video.

In *habeas corpus* cases, a due process error is harmless unless it had a substantial and injurious effect on the outcome of the proceeding. *O'Neal v. McAninch*, 513 U.S. 432 (1995). Because even if the hearing officer erred in not allowing Cherrone to view the video, any error is harmless because had the hearing officer allowed Cherrone to view the video himself, it would not have changed the course of the hearing or altered the outcome.

## VI. DENIAL OF THE RIGHT TO BE HEARD

In ground six of his petition, Cherrone alleges that "the hearing officer failed to consider Cherrone's statement therefore denying his right to be heard" (DE 1 at 8). But the record establishes that Cherrone was present at the hearing, that he made a statement and arguments against the trafficking charge, and that the hearing officer recorded at least the gist of Cherrone's statement in the portion of the report of disciplinary hearing entitled "offender's comment" (DE 8-8).

In his petition for writ of habeas corpus, Cherrone states that the hearing officer did not make note of his comments in the portion of the report of hearing entitled "The following evidence was relied on to reach the decision in this hearing." (DE 1 at 8). But, as the title suggests, this portion of the hearing report form is for evidence relied on by the hearing officer. That the hearing officer apparently did not find Cherrone's statement credible, and did not rely on it in reaching her decision, does not mean that she did not consider his statement, and certainly does not violate Cherrone's due process rights.

Cherrone was not denied the right, guaranteed by *Wolff v. McDonnell*, to be present at the hearing and present a defense against the charges against him. That the hearing officer did not credit Cherrone's statement or agree with the arguments he presented does not violate the protections of *Wolff v. McDonnell*.

## VII. DENIAL OF RIGHT TO WRITTEN STATEMENT OF FACTS

In ground seven of his petition, Cherrone asserts a "denial of [his] right to a written copy of facts found" by the hearing officer (DE 1 at 9). A review of this claim establishes that Cherrone does not allege that the hearing officer did not provide him with a written statement of the facts she relied on, but rather that he believes that the statement she did provide him was inadequate.

Cherrone asserts in his habeas petition that:

> The record is void of facts supporting this allegation. Stacy Nolan provides one single line she states were facts in her decision . . . *"I believe the I.A. report supports the charge and based on Ofc. Manista['s] statement admitting to giving the [offender] food in the I.A. report I find him guilty."*

*DE 1 at 9.* (Emphasis in original).

Due process requires that an inmate subject to disciplinary action at which he could lose earned credit time be provided with "a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Wolff v. McDonnell*, 418 U.S. at 564-565.

> The line between constitutional adequacy and inadequacy is a fine, but important one. When the committee writes "based on all available evidence the resident is guilty," no agency or court can discern the basis for the Committee's rulings. If, however, the committee writes "resident is lying," or the guard saw him therefore . . . ," or resident admits he committed the act charged," or another statement establishing the evidence underlying its decision, then the inmate is protected from mischaracterization of the disciplinary

16

action when it comes under review. *Redding v. Fairman*, 717 F.2d 1105, 1116 (7th Cir. 1983).

Written statements ensure both administrative accountability and meaningful review by the courts. *Scruggs v. Jordan*, 485 F.3d 934, 940 (7th Cir. 2007). The written statement requirement, however,"is not onerous," and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* "[T]he kind of statements that will satisfy the constitutional minimum will vary from case to case depending on the severity of the case charges and the complexity of the factual circumstances and proof offered by both sides." *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987).

The trafficking charge against Cherrone did not involve complex factual or legal issues. The only disputed issue was whether or not Cherrone ate foodstuffs brought into the facility by Officer Manista. The hearing officer's brief statement adequately set forth the evidentiary basis for her decision, namely, her reliance on the statement by Officer Manista, that she brought foodstuffs into the facility and that Cherrone ate those foodstuffs.

The hearing officer obviously chose to credit Officer Manista's statement and not to credit Cherrone's account. "As there is no mystery about its reasoning process, despite the extreme brevity of its statement of reasons, that statement is

17

not so deficient as to create error of constitutional magnitude." *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987) (statement of evidence relied on was sufficient where it indicated reliance on the officer's statement which conflicted with inmate's account, since it was clear the board believed the officer and disbelieved the inmate); *see also Culbert v. Young,* 834 F.2d at 631 (brief statement was sufficient where the only issue to be decided was the relative credibility of witness accounts, and it was clear whose account the board had credited).

CONCLUSION

For the foregoing reasons, this Court **DENIES** this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2244(d)(1), and **DIRECTS** the Clerk to close this case.

**DATED: June 27, 2013**                       **/S/RUDY LOZANO, Judge**
                                                        **United States District Court**